IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



FILED
SEP 20 2017
Clerk, U.S. District Court
District Of Montana
Billings

| | |
|---|---|
| THERESA SAND-SMITH,<br><br>Plaintiff,<br><br>vs.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,<br><br>Defendant. | CV 17-0004-BLG-SPW<br><br>OPINION AND ORDER |

Before the Court is Plaintiff Theresa Sand-Smith's motion for summary judgment (Doc. 36) and Defendant Liberty Life Assurance Company of Boston's cross-motion for summary judgment (Doc. 39). For the foregoing reasons, the Court GRANTS Sand-Smith's motion and DENIES Liberty Life's motion.

I. **Undisputed facts**

Liberty Life Assurance Company of Boston is an insurance company licensed to do business in Montana. (Doc. 6 at ¶ 2). In 2003, Liberty Life issued a group disability income plan (the Plan) to Farmers Group, Inc. (Doc. 32-2). The Plan obligated Liberty Life to "pay the Covered Person a Monthly Benefit" when it "receives Proof that a Covered Person is Disabled due to Injury or Sickness." (Doc. 32-2 at 12; Doc. 32-4 at 24). "Disability" meant the covered person is "unable to perform" his own occupation. (Doc. 32-2 at 5; Doc. 32-4 at 11).

1

"Sickness" meant "illness, disease, pregnancy or complications of pregnancy."
(Doc. 32-2 at 8; Doc. 32-4 at 18).

Theresa Sand-Smith works as a claims adjuster for Farmers and resides in Billings, Montana. (Doc. 44 at 3). Liberty Life issued Sand-Smith a certificate of coverage under the Plan. (Doc. 44 at 3). The Plan's first policy (the 2003 Policy) contained the following provision:

> Any provision of this policy which, on its Effective Date, is in conflict with the statutes of the governing jurisdiction of this policy is hereby amended to conform to the minimum requirements of such statute.

(Doc. 32-2 at 28). The 2003 Policy listed California as the governing jurisdiction. (Doc. 32-2 at 1). The 2003 Policy also contained a provision that reserved Liberty Life's right to change or modify the Plan unilaterally. (Doc. 32-2 at 25).

In 2014, Sand-Smith became disabled due to her bipolar disorder. (Doc. 44 at 5). Sand-Smith applied for long term disability benefits under the Plan. (Doc. 44 at 3). On July 9, 2015, Liberty Life approved Sand-Smith's claim. (Doc. 32-5 at 1). Liberty Life determined Sand-Smith became disabled on December 6, 2014, and that she was eligible to receive long term disability benefits beginning June 15, 2015. (Doc. 32-5 at 2; Doc. 44 at 3). In its letter approving Sand-Smith's claim, Liberty Life notified Sand-Smith that the Plan contained a mental illness provision that limited her long term disability benefits to 24 months. (Doc. 32-5 at 1-2).

On January 1, 2016, Liberty Life issued a renewed policy under the Plan (the 2016 Policy). (Doc. 32-4 at 4). The Plan's mental illness provision remained unchanged under the 2016 Policy. (Doc. 32-4 at 27). Different from the 2003 Policy, however, the 2016 Policy contained the following provision:

> Any provision of this policy which, on its effective date, is in conflict with the statutes of the state in which the insured resides on such date is hereby amended to conform to the minimum requirements of such statutes

(Doc. 32-4 at 41).

On June 24, 2016, Sand-Smith sent a letter to the Montana Insurance Commissioner, which stated:

> Liberty Mutual Insurance Company, the long term disability insurance carrier, tells me my long term disability benefit ends after two years as I have a mental health disorder. It is my understanding there is no maximum term if it is a physical disability. I believe I am being discriminated against since I have a mental health disability as opposed to a physical disability. Is this discrimination legal? Thank you.

(Doc. 32-6 at 3). On June 27, 2016, the Montana Insurance Commissioner sent Liberty Life a letter inquiring about Sand-Smith's claim. (Doc. 32-6 at 1). Liberty Life responded that Sand-Smith's long term disability benefits were limited to 24 months due to the Plan's mental illness provision. (Doc. 32-7 at 1-2). Shortly after, Sand-Smith retained an attorney.

On August 17, 2016, Sand-Smith's attorney sent Liberty Life a letter that claimed the mental illness provision was void under Montana's mental health

3

parity law, Montana Code Annotated § 33-22-706. (Doc. 32-8 at 1-2). Sand-Smith's attorney requested a complete copy of Sand-Smith's policy. (Doc. 32-8 at 2). Liberty Life responded that Sand-Smith's long term disability benefits were limited to 24 months due to the Plan's mental illness provision. (Doc. 32-9 at 1-2). Liberty Life further indicated that Montana's mental health parity law was not applicable because the Plan was an employee welfare benefit plan governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq., (ERISA). (Doc. 32-9 at 1-2). Attached to Liberty Life's letter was a complete copy of the 2016 Policy. (Doc. 32-9 at 1-46).

On December 6, 2016, Liberty Life sent Sand-Smith a letter stating her benefits would be terminated June 14, 2017. (Doc. 32-10 at 1-2). On May 22, 2017, Liberty Life sent Sand-Smith's attorney a final letter stating Sand-Smith's benefits would be terminated June 14, 2017. (Doc. 42-1 at 4). The May 22, 2017, letter informed Sand-Smith's attorney that Sand-Smith "may request a review of this denial." (Doc. 42-1 at 4).

Sand-Smith filed a complaint in state court seeking a declaratory judgment that the mental illness provision was void under Montana law. (Doc. 6). Liberty Life removed the case to federal court under federal question jurisdiction. (Doc. 1). The parties filed cross motions for summary judgment on whether Montana's mental health parity law voids the mental illness limitation.

## II. Standard of review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the ERISA context, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Nolan v. Heald Coll.*, 551 F.3d 1148, 1153 (9th Cir. 2009).

## III. Discussion

This is an abnormal ERISA case. The Court is not asked to determine whether the Plan is an ERISA plan; the parties agree that it is. *See Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118, 1120 (9th Cir. 1998) ("The existence of an ERISA plan is a question of fact, to be answered in the light of all the surrounding circumstances from the point of view of a reasonable person."). Nor is the Court asked to determine whether Sand-Smith is entitled to long term disability benefits; the parties agree that she is. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (district court reviews a denial of ERISA benefits *de novo* unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits, in which case the district court reviews denial for abuse of discretion).

5

The narrow question before the Court is whether Montana's mental health parity law voids the Plan's mental illness limitation. If it does, Sand-Smith is entitled to the same long-term disability benefits she would receive if she were physically disabled. If it doesn't, Sand-Smith's long-term disability benefits are limited to 24 months. To answer the question, the Court must conduct three inquiries. First, whether the 2003 Policy or the 2016 Policy governs Sand-Smith's claim. Second, whether Montana's mental health parity law is pre-empted by ERISA. And third, if Montana's mental health parity law is not pre-empted by ERISA, whether it includes within its reach Sand-Smith's disability benefits.

A. **Which policy governs Sand-Smith's claim?**

Which policy governs Sand-Smith's claim turns on whether Sand-Smith's benefits were vested when Liberty Life approved her claim in 2015.

Under ERISA, disability benefits are classified as welfare benefits. 29 U.S.C. § 1002(1). Where welfare benefits have not vested, the controlling policy is the plan in effect at the time benefits were denied. *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1159-1160 (9th Cir. 2001). "Welfare benefits, unlike pension benefits, do not vest unless and until the employer says they do." *Alday v. Raytheon Co.*, 693 F.3d 772, 781-782 (9th Cir. 2012). Contractual vesting of a welfare benefit must be stated in clear and express language. *Grosz-Salomon*, 237 F.3d at 1159-1160. An employer is "generally free under ERISA, for any

reason at any time, to adopt, modify or terminate welfare benefits unless it contractually cedes the freedom." *Alday*, 693 F.3d at 782 (citation omitted). In the absence of contrary language, a provision reserving the right to amend, modify, or terminate a welfare plan is sufficient to a defeat a claim that welfare benefits have vested. *See Alday*, 693 F.3d at 791 (citing *Vallone v. CAN Fin. Corp.*, 375 F.3d 623 (7th Cir. 2004)).

Liberty Life repeatedly asserts Sand-Smith's benefits "vested" under the 2003 Policy because that was the policy in effect when it approved her application for long term disability benefits in 2015. (Doc. 40 at 10; Doc. 43 at 12; Doc. 46 at 7). The Court is not sure Liberty Life quite knows what it is asking for. Vested benefits are nonforfeitable. *See McDonald v. Pension Plan of NYSA-ILA Pension Trust Fund*, 320 F.3d 151, 156 (2nd Cir. 2003). Non-vested benefits, on the other hand, can be modified or terminated for any reason at any time. *Alday*, 693 F.3d at 782. If Sand-Smith's benefits were vested, Liberty Life could not alter or take them away for the duration of the benefit period. *See Zielinski v. Pabst Brewing Co., Inc.*, 463 F.3d 615, 621 (7th Cir. 2006) (employees were entitled to prescription drug plan for lifetime because benefits were vested). The benefit period here is either 24 months or significantly longer, depending on whether Montana's mental health parity law voids the mental illness limitation. Thus, Liberty Life potentially exposes itself to a significantly longer benefits period by

arguing Sand-Smith's benefits "vested" under the 2003 Policy. However, fortunately for Liberty Life, the Court cannot be controlled by a party's erroneous conclusion of law. *United States v. Miller*, 822 F.2d 828, 832 (9th Cir. 1987). Sand-Smith's benefits were clearly not vested in 2015 because the 2003 Policy expressly reserved Liberty Life's right to change or modify the Plan unilaterally. (Doc. 32-2 at 25). In the absence of any "clear and express language" stating otherwise, the reservation of rights provision establishes that Sand-Smith's benefits were not vested in 2015. *Alday*, 693 F.3d at 782, 791.

The 2016 Policy governs Sand-Smith's claim because that is when Liberty Life first denied her benefits. *Grosz-Salomon*, 237 F.3d at 1159-1160. Although this case presents a somewhat unique situation given Liberty Life actually approved Sand-Smith's initial claim for benefits, the 2016 and 2017 correspondence establishes Liberty Life denied Sand-Smith's claim for long term disability benefits—beyond 24 months—for the first time in August 2016.

Sand-Smith's claim for long term disability benefits was approved by Liberty Life on July 9, 2015. (Doc. 32-5 at 1). At that time, Sand-Smith had not made a request for benefits beyond the 24 months approved by Liberty Life. Instead, Liberty Life pre-emptively informed Sand-Smith her benefits were limited to 24 months. (Doc. 32-5 at 1). It was not until Sand-Smith wrote the Montana Insurance Commissioner a letter on June 24, 2016, that she claimed to anyone that

she may be entitled to longer benefits. (Doc. 32-6 at 3). And it was not until Sand-Smith's attorney sent Liberty Life a letter on August 17, 2016, that Sand-Smith formally requested Liberty Life to provide her with longer benefits. (Doc. 32-8 at 1-2). On August 27, 2016, Liberty Life formally denied Sand-Smith's request. (Doc. 32-9 at 1). Liberty Life subsequently mailed follow up letters to provide a firm date upon which Sand-Smith's benefits would be terminated. (Docs. 32-10 and 42-1). Therefore, the 2016 Policy governs Sand-Smith's claim because it was the controlling policy when Sand-Smiths's benefits were denied. *Grosz-Salomon*, 237 F.3d at 1159-1160.

The 2016 Policy amended itself to conform to the statutory requirements of the state where the insured resided. (Doc. 32-4 at 41). Thus, the 2016 Policy incorporated Montana's mental health parity law so long as the law was not pre-empted.

**B.    Is Montana's mental health parity law pre-empted by ERISA?**

ERISA pre-empts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Nevertheless, ERISA also has a saving clause that saves from pre-emption "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). The Supreme Court established a two part test to determine whether a law is saved from pre-emption. *Kentucky Ass'n of Health Plans v. Miller*, 538 U.S. 329, 342

(2003). First, the law must be "specifically directed towards entities engaged in insurance." *Miller*, 538 U.S. at 342. A law is specifically directed towards entities engaged in insurance if it is "grounded in policy concerns specific to the insurance industry." *Orzechowski v. Boeing Company Non-Union Long-Term Disability Plan, Plan Number 265*, 856 F.3d 686, 693 (9th Cir. 2017) (internal quotation and citation omitted). Second, the law must "substantially affect the risk pooling arrangement between the insurer and the insured." *Miller*, 538 U.S. at 342. This requirement is aimed at ensuring that the laws in question are "targeted at insurance practices, not merely insurance companies." *Orzechowski*, 856 F.3d at 694.

Montana's mental health parity law is directed towards entities engaged in insurance because it specifically regulates health and disability insurance policies delivered in Montana. Mont. Code Ann. § 33-22-706(1). The Ninth Circuit held similar language satisfied *Miller*'s first prong. *Orzechowski*, 856 F.3d at 694 (*Miller*'s first prong satisfied because California law covered "a policy . . . that provides or funds life insurance or disability insurance coverage.").

Montana's mental health parity law substantially affects the risk pooling arrangement between the insurer and the insured because it requires health and disability insurance policies to provide a level of benefits for mental illness that is "no less favorable than that level provided for other physical illness generally."

10

Mont. Code Ann. § 33-22-706(1). In *Morrison*, the Ninth Circuit held a law that narrowed the scope of permissible bargains between insurers and insureds satisfied *Miller*'s second prong. *Standard Ins. Co. v. Morrison*, 584 F.3d 837, 844-845 (9th Cir. 2009). The Ninth Circuit reasoned the regulation would lead to "a greater number of claims being paid . . . increasing the benefit of risk pooling for consumers." *Morrison*, 584 F.3d at 845. Montana's mental health parity law similarly increases the benefit of risk pooling for consumers because it ensures they will receive the same level of benefits for mental and physical disabilities.

The 2016 Policy incorporated Montana's mental health parity law because the law was not pre-empted by ERISA. *Miller*, 538 U.S. at 342; 29 U.S.C. § 1144(b)(2)(A).

### C. Does Montana's mental health parity law cover Sand-Smith's disability benefits?

The parties dispute the reach of Montana's mental health parity law. First, the parties dispute whether the 2016 Policy meets the definition of "disability insurance." Second, the parties dispute whether Montana's mental health parity law requires equal treatment when the benefit is lost wages.

Statutory language must be construed according to its plain meaning. *Small v. Board of Trustees, Glacier County School District No. 9*, 31 P.3d 358, 362 (Mont. 2001). The Court's role is to "simply ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit

11

what has been inserted." *The Clark Fork Coalition v. Tubbs*, 380 P.3d 771, 777 (Mont. 2016).

### 1. Is the 2016 Policy "disability insurance"?

Montana's mental health parity law governs "health insurance" and "disability insurance" policies delivered in Montana. Mont. Code Ann. § 33-22-706(1). Liberty Life argues the 2016 Policy meets the definition of "disability income insurance," not "disability insurance." Sand-Smith argues the 2016 Policy is both disability insurance and disability income insurance, which is permitted under Montana law. The Court agrees with Sand-Smith.

"Disability insurance" means insurance "against bodily injury, disablement, or death by accidental means," or "against disablement or medical expense or indemnity resulting from sickness." Mont. Code Ann. § 33-1-207(1)(a-b). "Disability income insurance" means insurance that provides payment for "lost wages or other earned income or business or financial losses as a result of an inability to work due to sickness, injury, or a combination of sickness and injury." Mont. Code Ann. § 33-1-235. Montana law provides that certain coverages "may come within the definitions of two or more kinds of insurance," and that "the inclusion of such coverage within one definition shall not exclude it as to any other kind of insurance within the definition of which such coverage may likewise be reasonably included." Mont. Code Ann. § 33-1-205.

12

§ 33-1-205 allows an insurance coverage to fall under two different definitions of insurance, even where Montana law provides different definitions for each insurance. *Golt v. Aetna Life Ins. Co.*, 2 P.3d 841, 847 (Mont. 2000). In *Golt*, a dispute arose as to whether accidental death coverage was life insurance or disability insurance. 2 P.3d at 844-845. Montana law defined life insurance and disability insurance differently. 2 P.3d at 845-846. After interpreting the definition of each insurance, the Montana Supreme Court found the accidental death coverage met the definition of both insurances. *Golt*, 2 P.3d at 845-847. The Montana Supreme Court interpreted § 33-1-205 to mean such a result was permissible and held the accidental death coverage was both life insurance and disability insurance. *Golt*, 2 P.3d at 847.

Liberty Life argues the 2016 Policy provides a benefit of lost wages, which indicates the coverage is "disability income insurance." The Court agrees with Liberty Life. However, *Golt* and § 33-1-205 instruct that Sand-Smith's long term disability coverage may be "reasonably included" within the definition of "disability insurance" even though her long term benefits also come within the definition of "disability income insurance." As previously stated, Montana law defines "disability insurance" as insurance "against disablement or medical expense or indemnity resulting from sickness." Mont. Code Ann. § 33-1-207(1)(a-b). The 2016 Policy provides a benefit to Sand-Smith in the event she is "unable to

perform" her job due to illness. "Unable to perform" falls squarely within the plain meaning of "disablement." *Webster's New World Dictionary* 390 (3rd ed. 1994) ("to make unable, unfit, or ineffective."); *Black's Law Dictionary* 560 (Bryan A. Garner ed., 10th ed. 2014) ("the imposition of a legal disability."). Construing the statute according to its plain meaning, the 2016 Policy constitutes disability insurance because it insured Sand-Smith against "disablement."

Furthermore, the legislature specifically excluded worker's compensation insurance from the definition of disability insurance. Had the legislature wished to exclude long term disability coverage from the definition of disability insurance, it would have done so. *Golt*, 2 P.3d at 847 ("If . . . the legislature meant to exclude [accidental death] from the definition of life insurance, it would have explicitly done so, as it did with workers' compensation insurance."). The Court holds the definition of disability insurance "reasonably includes" Sand-Smith's long term disability insurance because her coverage insured her against "disablement."

### 2. Does Montana's mental health parity law require equal treatment when the benefit is lost wages?

Montana's mental health parity law requires health and disability insurance policies to provide "a level of benefits for the necessary care and treatment of severe mental illnesses . . . that is no less favorable than that level provided for other physical illness generally." Mont. Code Ann. § 33-22-706(1). Liberty Life

14

argues lost wages are not a benefit covered by the law. Sand-Smith argues they are. The Court agrees with Sand-Smith.

Benefits covered by Montana's mental health parity law "include but are not limited to" "inpatient hospital services", "outpatient services", "rehabilitative services", "medication", "services rendered by a licensed physician" and "services rendered by a licensed advanced practice registered nurse." Mont. Code Ann. § 33-22-706(2). Coverages excluded by Montana's mental health parity law are "blanket", "short-term travel", "accident only", "limited or specific disease", "Title XVIII of the Social Security Act (medicare)", or "any other similar coverage under state or federal government plans." Mont. Code Ann. § 33-22-706(4)(b).

There is some merit to Liberty Life's argument. The list of benefits indicates the law is aimed at hospitalization and treatment and similar benefits. However, the Court holds Montana's mental health parity law includes lost wages for four reasons. First, the legislature chose to include "disability insurance" when other legislatures have limited their mental health parity laws to only "health insurance." Or.Rev.Stat. § 743A.168; Cal. Health & Safety Code § 1374.72. As discussed above, disability insurance in Montana may sometimes mean insurance against lost wages. Second, the list of benefits is specifically non-exhaustive. *See Harlick v. Blue Shield of California*, 686 F.3d 699, 714 (9th Cir. 2012) (the phrase "including but not limited to" was "critical" because it meant benefits were not

limited to specified services). The legislature could have limited the benefits had it so chosen. Third, the legislature did not exclude long term disability coverage when it specifically excluded others. *Golt*, 2 P.3d at 847. Again, the legislature could have excluded long term disability coverage had it so chosen. And fourth, Montana's mental health parity law covers benefits for the "necessary care" of mental illness. "Necessary" means "that cannot be dispensed with, essential, or indispensable." *Webster's New World Dictionary* 905 (3rd ed. 1994). "Care" means "take charge of, look after, and provide for." *Webster's New World Dictionary* 212 (3rd ed. 1994). Most people would probably consider lost wages to be indispensable in order to provide for themselves.

For those reasons, the Court holds Montana's mental health parity law requires equal treatment when the benefit is lost wages.

## IV. Conclusion

Montana's mental health parity law requires the 2016 Policy to provide Sand-Smith the same benefits for her mental illness that it would have had her disability been physical. The 2016 Policy's mental illness limitation is therefore voided because it conflicts with Montana's mental health parity law. *See* Harlick, 686 F.3d at 721; *see also Couch on Insurance* § 19:3 (state laws regulating insurance "supersede the conflicting policy provisions and become part of the plan itself."). Accordingly,

16

IT IS HEREBY ORDERED that Sand-Smith's motion for summary judgment (Doc. 36) is GRANTED.

IT IS FURTHER ORDERED that Liberty Life's motion for summary judgment (Doc. 39) is DENIED.

DATED this 20th day of September, 2017.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge